David B. TURNER

v.

Spencer APOLLONIO, et al.

Supreme Judicial Court of Maine.

Argued Jan. 21, 1982.

Decided Feb. 19, 1982.

Lund, Wilk, Scott & Goodall, Gordon H. S. Scott (orally), Augusta, for plaintiff.

Elizabeth Butler, Cabanne Howard (orally), Asst. Attys. Gen., Augusta, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

WATHEN, Justice.

Plaintiff appeals from an order of the Superior Court, Washington County, which denied his appeal from a licensing order of the Commissioner of Marine Resources (the Commissioner). We sustain the appeal and remand with directions for a new hearing.

### Procedural History

P.L.1979, ch. 631 amended 38 M.R.S.A. § 1022[1] to empower the Commissioner of Marine Resources to license fish weirs in unorganized territory. Prior to the amendment the Land Use Regulation Commission had been authorized to grant such permits pursuant to 12 M.R.S.A. § 685–B(1)(A). The 1979 amendment removed licensing authority from the Land Use Regulation Commission and voided permits granted by that agency. In 1978, plaintiff had been granted licenses by the Land Use Regulation Commission to build fish weirs in Bailey's Mistake, Sandy Cove and Moose Cove off the unorganized territory of Trescott. Plaintiff had not completed construction of any weirs by June 1980, at which time he applied to the Commissioner for licenses to build weirs in the same three places. Defendants Steven and David Lord applied for a license to build a weir in Sandy Cove. Their application stated they were applying as agents for a crew that had traditionally fished that location for forty years. Defendant W. William Anderson applied for a

---

1. 38 M.R.S.A. § 1022 (Supp.1981) provides in pertinent part:

   In the case of waters adjacent to unorganized or deorganized territory that is not an island, the commissioner shall have the powers of municipal officers to issue licenses under this section. Notwithstanding the provisions of this section governing procedures, the commissioner shall review the application and hold a hearing as if this were a lease application under Title 12, section 6072, subsections 5 and 6.

permit in Moose Cove, also stating that he was applying as agent for a crew. James Fitzgerald applied for permits for Sandy Cove and Bailey's Mistake, and Charles Lookabaugh applied for two permits in Bailey's Mistake. Neither Fitzgerald nor Lookabaugh are parties to this proceeding.

A single hearing was held on all applications on June 30, 1980, before two presiding officers. The Commissioner announced his decisions on July 10, 1980, awarding weir licenses to defendants Lord for Sandy Cove, to defendant Anderson for Moose Cove, and to Lookabaugh for Bailey's Mistake. Because of the locations requested and the size of the coves, the Commissioner found that only one application could be granted at each site.[2] He also found that none of the applications would interfere with navigation or the rights of private citizens; thus they all met the statutory criteria under which the municipal officers and the Commissioner "shall issue a license."

Plaintiff appealed the Commissioner's decisions to Superior Court where all appeals were consolidated. Plaintiff moved for summary judgment, and the court denied the motion affirming the granting of the licenses to the Lords and Anderson. From that affirmance the subject appeal arises.

## I.

▮ Despite the fact that it has not been raised on this appeal, we must address the jurisdiction of the Supreme Judicial Court to entertain this appeal. The Superior Court held that with respect to procedure and appeal the proceedings are governed by the Maine Administrative Procedure Act (the "APA"), 5 M.R.S.A. §§ 8001–11008 (1979), rather than 38 M.R.S.A. § 1022 (Supp.1981). In *organized* territory the municipal officers are granted licensing authority by section 1022 and appeal to the Superior Court is provided. It is well settled law that section 1022 constitutes the Superior Court as the "court of last resort,"

and an appeal to the Law Court is not available on the merits. *Blaney v. Rittal*, Me., 312 A.2d 522 (1973); *In re Hadlock*, 142 Me. 116, 48 A.2d 628 (1946). We agree with the Superior Court that the APA controls the extent of judicial review from a decision of the Commissioner in licensing weirs in unorganized territory while section 1022 deals with similar proceedings before municipal officers in organized territory. Any lack of conceptual symmetry which flows from this holding is adequately explained by the different nature of the official bodies granted the power of decision under each scheme. By enacting the APA the legislature clearly expressed its intent to prescribe procedure before a body of State government such as the Commissioner. Further 5 M.R.S.A. § 11001(1) provides for judicial review as follows:

> Except where a statute provides for direct review or review of a pro forma judicial decree by the Supreme Judicial Court or where judicial review is specifically precluded or the issues therein limited by statute, any person who is aggrieved by final agency action shall be entitled to judicial review thereof in the Superior Court in the manner provided by this subchapter.

Appeal to the Supreme Judicial Court sitting as the Law Court is provided for in this case as in other civil cases by 5 M.R.S.A. § 11008. The limitations of judicial review to questions of law and sufficiency of the evidence are set forth in 5 M.R.S.A. § 11007.

## II.

Plaintiff's first argument on appeal arises from a claimed irregularity in the procedure employed by the Commissioner in arriving at his decision. The hearing in this case was conducted on June 30, 1980 by two presiding officers. On July 10, the Commissioner met with them and discussed the testimony taken and the evidence intro-

---

2. 12 M.R.S.A. § 6525(1) (1981) provides:

 *1. Setting nets or seines near weirs.* It shall be unlawful for any person, other than the weir owner or his crew members, to set or assist in setting any net or seine within 2,000 feet of the mouth of a weir whose operator is validly licensed under section 6501 and when the weir is licensed under Title 38, chapter 9.

duced at the hearing. The officers prepared and gave to the Commissioner two charts of the area under discussion and notes made by them at the hearings. The Commissioner used the notes to locate specific testimony on the recorded tapes of the hearing. On that same day the Commissioner mailed letters to the applicants announcing his decisions. The letters stated that a copy of the findings of fact underlying the decision would be mailed shortly, making the agency action final. It further stated that the appeal period would begin to run when the findings were issued. On July 17, one of the presiding officers sent proposed findings signed by the Commissioner to the parties, affording an opportunity to dispute the findings and to request reconsideration of the license issuances or denials. Plaintiff submitted exceptions to the findings, but on August 4, the Commissioner rejected the exceptions, stating that the decisions remained unaltered and that the findings were being adopted as final findings, thus commencing the appeal period.

The foregoing set of facts call into play two somewhat inconsistent provisions of the APA. In the area of both federal and state administrative law there has been much controversy concerning institutional or anonymous decisions resulting from administrative procedure. The administrator, unlike a judge, does not always hear the evidence, compile and review a record and render his decision. Administrators frequently rely upon consultation with staff of the agency in considering the record. Such a procedure can obviously result in a decision which reflects the analysis of persons other than the administrator, and hence the designation as an "anonymous decision" is apt. The legislature dealt with this problem by enacting two specific provisions. 5 M.R.S.A. § 9055(2) describes the right of consultation as follows:

2. *Communication permitted.* This section shall not prohibit any agency member or other presiding officer described in subsection 1 from:

A. Communicating in any respect with other members of the agency or other presiding officers; or

B. Having the aid or advice of those members of his own agency staff, counsel or consultants retained by the agency who have not participated and will not participate in the agency proceeding in an advocate capacity.

5 M.R.S.A. § 9062(4) imposes the following requirements for reports of presiding officers:

4. *Report.* In the event that the presiding officer prepares any report or proposed findings for the agency, the report or findings shall be in writing. A copy of the report or findings shall be provided to each party and an opportunity shall be provided for response or exceptions to be filed by each party.

Plaintiff contends that the procedure followed by the Commissioner violated section 9062(4) in that no copy of a report or findings of the presiding officers was sent to plaintiff before final agency action had taken place; therefore, plaintiff was denied an adequate opportunity to respond to the report or findings. Defendants contend that no report was made to the Commissioner and characterize the interaction between him and the presiding officers as that permitted by section 9055 which allows a decision maker to have the aid or advice of members of his staff who have not participated in an agency proceeding in an advocate's capacity.

Although "report" is not defined by the APA, its use in section 9062(4) indicates that it refers to an analysis of the case by the presiding officer. This construction is in accord with Professor Davis' description of the hearing officer's report, which he points out is now called the initial or recommended decision in the Federal APA and "typically includes findings of fact, conclusions of law and discretionary determinations." K. Davis, *Administrative Law Text* § 10.01 (1972).

■ The question presented is whether a report occurred in this case. Section 9062 does not mandate that the presiding officers prepare findings or a report. Also, as

defendant points out, the Commissioner's responses to the interrogatories concerning the July 10 meeting are consistent with the statute allowing him to have the aid and advice of his own staff. The Commissioner's replies show that he discussed the hearing with the officers and that they provided him with materials that would assist him in finding and interpreting the evidence. Such discussions, standing alone, do not seem to constitute a "report" as they do not include recommendations, findings or an initial decision. In this case there is more, however, and the inference is irresistible that a report or proposed findings of fact were presented.

■ In responding to the plaintiff's exceptions, the Commissioner expressly acknowledged that there was a report from one of the presiding officers and that the substance of the report could be found in the findings of fact and conclusions of law forwarded to the parties. This concession alone would support a finding that the presiding officer made a report to the Commissioner as referred to in section 9062(4). Beyond that, the sequence of events in the decision-making process points to the same conclusion. The Commissioner's meeting with the presiding officers and his decisions took place on the same day, July 10. In letters to the applicants of even date he announced his decision and stated: "A copy of the findings of fact underlying my decision will be mailed to you in the near future." Seven days later, one of the presiding officers sent the parties a copy of "the Commissioner's *proposed* findings of fact and conclusions of law which *served* as the

basis for [his] decisions." (emphasis added) Since the findings were the basis for his decision they must have been presented to the Commissioner before he made the decision. We conclude on this record that there was a report, and the parties were provided no opportunity to respond prior to the decision.

■ Since a report of the presiding officers served as a basis for the Commissioner's decision, the question remains whether the statutory mandate was fulfilled by sending the proposed findings to the parties on July 17. Whether the decision became final on July 10 or July 17 it is clear that no opportunity for response was extended prior to either date.[3] The right to respond provided by section 9062(4) would be meaningless if it did not precede the issuance of a final decision. Implicit in the statute is the idea that:

> The individual litigant is entitled to be apprised of the materials upon which the agency is acting. He has a right not only to refute but ... to supplement, explain, and give different perspective to the hearer's view of the case.

*Mazza v. Cavicchia*, 15 N.J. 498, 105 A.2d 545 (1954).[4] To prevent fundamental error in the agency's decision that could not be easily remedied by post decision procedures, the opportunity to respond must be provided before the decision is made. *Tulsa Classroom Teachers Assn. v. State Board*, 601 P.2d 99 (Okl.1979). Given the agency's lack of compliance with section 9062(4) the court's judgment affirming the agency's action must be vacated. *See, e.g., Meier v.*

3. The Superior Court found that final agency action occurred on July 10, with the issuance of the Commissioner's decision. The principle of finality is governed not by its characterization by the agency but rather by the nature and effect of the order. *Fidelity Television, Inc. v. F.C.C.*, 502 F.2d 443 (D.C.Cir.1974). In this instance the Commissioner's letters of July 10 conform to the statutory definition of final agency action in that the legal rights of the parties were determined and no further recourse within the agency was provided. 5 M.R.S.A. § 8002(4). Moreover, the factors which a District of Columbia Court found decisive in finding an agency order final are present

in this case as well. The letter does not purport to be notice of a *proposed* decision; neither does it apprise the parties of their right to present exceptions, but rather of their right to seek appellate review. *See Meier v. Dist. of Columbia Rental Accom. Com.*, 372 A.2d 566 (D.C.App.1977).

4. In *Mazza* the Court, in the absence of a statutory mandate, created a requirement of disclosure of the hearing officer's report. This decision has been the subject of scholarly criticism on this point. *See* K. Davis, *Administrative Law Text*, § 11.09 (1972).

**684**

D.C. Rental Accom. Com., supra; Bethesda Management Services, Inc. v. Department of Licensing and Regulation, 276 Md. 619, 350 A.2d 390 (1976).

■■■ Plaintiff argues that remand to the Commissioner would be inappropriate because of his participation in the proceedings to date and his initial decision. The cases cited in support of that argument are inapposite, however, for they deal with administrators whose impartiality has become suspect by participation in the investigative or advocative aspect of the case or who have publicly admitted having reached a decision before examining the record. It is not contrary to due process to permit an administrator who has had his initial decision reversed to decide the issue a second time. See Federal Trade Comm'n. v. Cement Institute, 333 U.S. 683, 68 S.Ct. 793, 92 L.Ed. 1010 (1948) and N.L.R.B. v. Donnelly Garment Co., 330 U.S. 219, 67 S.Ct. 756, 91 L.Ed. 854 (1947). When an administrator acts in a quasi-judicial capacity his impartiality is not necessarily destroyed by participation in a prior adjudication. Judges are routinely required to conduct a second trial after the results of a first trial have been vacated. "Without a showing to the contrary, state administrators 'are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'" Withrow v. Larkin, 421 U.S. 35, 55, 95 S.Ct. 1456, 1468, 43 L.Ed.2d 712 (1975).

Under some circumstances a remand resulting from a procedural post-hearing irregularity might not require a new evidentiary hearing. In the circumstances of this case, however, the integrity of the administrative process mandates that there be a new hearing on the license applications involved in this appeal. In this way the decision-making process may operate free of any taint from the prior proceeding. The parties may choose to avoid the needless repetition of evidence by stipulating that the evidence previously presented may be considered as part of the record of the new hearing.

In view of the conclusion reached on the first issue and the fact that remand will afford a rehearing, it is not necessary to address the remaining issues raised on this appeal.

The entry is:

Judgment of the Superior Court vacated. Remanded to Superior Court with directions to vacate the decisions of the Commissioner of Marine Resources in CV 80–101, CV 80–102, CV 80–123, CV 80–103, CV 80–104 and CV 80–122 and to remand to the Commissioner of Marine Resources for further proceedings consistent with the opinion herein.

All concurring.