NEW ENGLAND REHABILITATION HOSPITAL OF HARTFORD, INC., ET AL. *v.* COMMISSION ON HOSPITALS AND HEALTH CARE ET AL.*

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE NO. 506106
HARTFORD-NEW BRITAIN AT HARTFORD

Memorandum filed July 20, 1992

*Hoberman & Pollack,* for the plaintiffs.

*Patricia A. Gerner* and *Richard J. Lynch,* assistant attorneys general, and *Richard Blumenthal,* attorney general, for the named defendant.

* This case was appealed to the Supreme Court. The judgment was affirmed. *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals & Health Care,* 226 Conn. 105, 627 A.2d 1257 (1993).

*Updike, Kelly & Spellacy,* for the defendants Hartford Rehabilitation Hospital, Inc., Saint Francis Hospital and Medical Center and Mount Sinai Hospital Corporation.

HODGSON, J. The plaintiffs bring this appeal from the administrative action of the defendant commission on hospitals and health care (commission) denying the plaintiffs' application for a certificate of need to establish a medical rehabilitation facility. The plaintiffs are New England Rehabilitation Hospital of Hartford, Inc., AdvantageHealth Corporation, the Institute of Living and Hartford Hospital. In addition to the commission, the plaintiffs have named as defendants another group whose application to operate a rehabilitation hospital was heard at the same time as the plaintiffs' and was granted by the commission. The members of that group of defendants are Hartford Rehabilitation Hospital, Inc., Saint Francis Hospital and Medical Center and the Mount Sinai Hospital Corporation, all doing business as Central Connecticut Rehabilitation Hospital, Inc. (defendant applicants).

On the basis of a stipulation of facts agreed to by all of the parties, the court finds that the plaintiffs are aggrieved as to the denial of their application.

In addition to this appeal from the commission's denial of their own application, the plaintiffs have appealed the granting of the defendant applicants' application in *New England Rehabilitation Hospital of Hartford, Inc.* v. *Commission on Hospitals and Health Care,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 506105 (April 6, 1992). That appeal has been separately adjudicated and is not before this court.

The plaintiffs raise a number of procedural and substantive grounds for appeal that are best listed after a summary of the history of the plaintiffs' application, as follows.

On November 26, 1990, the plaintiffs filed a notice of intent to apply for a certificate of need to build a ninety bed medical rehabilitation hospital in Hartford. They filed their actual application on or about January 18, 1991. On October 10, 1990, the defendant applicants similarly filed a notice of intent to apply to establish such a facility and filed their actual application on or about May 20, 1991. On January 31, 1991, while the plaintiffs' application and the defendant applicants' notice were pending, the commission determined that it would conduct a general investigation regarding the need for medical rehabilitation facilities in the greater Hartford area. It did so in a proceeding in its investigative or research docket. It characterized this investigation, which included questionnaires and receipt of testimony on February 28, 1991, as separate and apart from any consideration of the merits of any pending application.

When the plaintiffs sought to participate by cross-examining witnesses at the investigative hearing, the commission denied the request. The hearing, however, was open to the public and the plaintiffs' representatives attended.

Upon completing its investigative hearing, the commission took up joint consideration of the application of the plaintiffs and the defendant applicants. Joint hearings on the two applications were held on August 20, 21 and 22, and September 12, 1991, before Commissioner John J. Farrell.

The plaintiffs' initial application sought a certificate of need for a ninety bed medical rehabilitation facility. The plaintiffs subsequently filed an amended application offering three alternative options, including converting an existing building to a sixty bed rehabilitation facility (Donnelly building). The defendant applicants submitted alternative proposals that included a

sixty bed facility and the elimination of some existing general rehabilitation beds operated by the defendant applicants.

On November 19, 1991, Farrell issued his proposed final decision on the plaintiffs' application. The plaintiffs allege that immediately before voting on the proposed final decision on that application on November 25, 1991, the commission substituted certain pages for other pages that had been contained originally in the proposed decision. The commission voted on November 25, 1991, to deny the plaintiffs' application and to approve that of the defendant applicants.

The plaintiffs raise the following procedural grounds, which they urge require remand or reversal of the commission's denial of their application: (1) The commission impermissibly used its "investigative" docket to make determinations of need that should have been made in the context of the plaintiffs' application, and, by denying the plaintiffs the status of parties in the investigation, deprived them of the ability to cross-examine witnesses and to participate fully in the proceedings by which the commission reached conclusions that affected its ruling on the plaintiffs' application; (2) the commission made changes in its proposed final decision without affording the plaintiffs an opportunity to file exceptions and briefs with regard to the revisions, as required by General Statutes § 4-179; and (3) the commission failed to review the record and the proposed final decision, other than the actions recommended, before voting to deny the plaintiffs' application.

The plaintiffs raise the following substantive grounds for reversal: (4) The commission erroneously determined that the application of the defendant applicants would result in greater overall savings in medical costs

than the plaintiffs' and arbitrarily and capriciously rejected the plaintiffs' application and proposals; and (5) the commission was inconsistent in the criteria it applied to the two applications.

Appeals from the actions of the commission are governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. The plaintiffs claim review pursuant to General Statutes § 4-183 (j), which provides in pertinent part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law . . . or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." A trial court is not to retry the case presented to the administrative agency nor substitute its judgment for that of the agency. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); *Hospital of St. Raphael* v. *Commission on Hospitals & Health Care,* 182 Conn. 314, 318, 438 A.2d 103 (1980); *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978). The court's ultimate duty as to claims of substantive errors is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. *Griffin Hospital* v. *Commission on Hospitals & Health Care,* supra, 496; *Burnham* v. *Administrator,* 184 Conn. 317, 322, 439 A.2d 1008 (1981); *Robinson* v. *Unemployment*

*Security Board of Review,* 181 Conn. 1, 5, 434 A.2d 293 (1980); *Cervantes* v. *Administrator,* 177 Conn. 132, 134, 411 A.2d 921 (1979).

The court will consider the plaintiffs' grounds in the order in which they are listed above.

The plaintiffs acknowledge that the commission is authorized by law to conduct investigations in aid of the exercise of its powers. Section 19a-149, formerly General Statutes § 19-73g, specifically provides for such investigations. The commission undertook an investigation into existing medical rehabilitation facilities and the need for further facilities while the plaintiffs' application was pending. As part of its consideration of the application, the commission was required, pursuant to General Statutes § 19a-153 (formerly General Statutes § 19-73k) to "take into consideration and make written findings concerning each of the following principles and guidelines . . . the impact of such proposal . . . on the interests of consumers of health care services and the payers for such services; the contribution of such proposal . . . to the quality, accessibility and cost-effectiveness of health care delivery in the region; whether there is a clear public need for any proposal or request . . . ."

The plaintiffs claim, essentially, that since the commission was required to assess need and cost-effectiveness in the context of its review of their application, it could not, while their application was pending, resort to an investigation pursuant to § 19a-149 concerning the general need for medical rehabilitation facilities.

The text of § 19a-149 contains no prohibition against a general investigation because of the pendency of an application to build a particular proposed facility and the statute contains no requirement that the parties to a pending application be made parties in a general

investigation by the commission. While the right to cross-examine is expressly provided for in contested hearings conducted by agencies pursuant to General Statutes § 4-178 (5), an investigation of general issues pursuant to § 19-149 is not a "contested case" which is defined in General Statutes § 4-166 (2) as "a proceeding . . . in which the legal right and duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing. . . ." The commission's general research into existing and needed rehabilitation services did not have as its focus the rights of the plaintiffs and did not determine or adjudicate their application.

The plaintiffs' contention that the commission used its investigative docket in a manner that curtailed their rights to participate in the presentation of evidence concerning need is simply not borne out by the record.

The report from the investigative docket was included in the commission's consideration of the plaintiffs' application over the objection of the plaintiffs. At the outset of the hearing on the proposals on August 20, 1991, Farrell, the presiding officer, stated that the plaintiffs "could address any deficiencies [they] found in [the investigative report]." The plaintiffs were provided a full opportunity to present any and all information they wanted on the issue of need over a hearing that covered four days and 430 pages of testimony and comment. The transcript of the hearing does not indicate that any witness offered by the plaintiffs was prevented from testifying or that the plaintiffs were denied the opportunity to call any witnesses from the investigation that they wanted to cross-examine.

The plaintiffs have failed to support their claim that the investigative docket was used as a substitute for a determination of need in conjunction with their par-

ticular application or that they were denied the opportunity to offer full advocacy as to the need for a facility in the proceedings as to their application.

The plaintiffs' reliance on *Dragan* v. *Connecticut Medical Examining Board,* 24 Conn. App. 662, 591 A.2d 150 (1991), rev'd, 223 Conn. 618, 613 A.2d 739 (1992), is misplaced. *Dragan* was a "contested case" within the meaning of § 4-178, in which the plaintiff's entitlement to a license to practice medicine was at issue. The commission's research docket was not, by contrast, a hearing in a contested case.

On November 19, 1991, the plaintiffs received the texts of the proposed final decisions of the commission as to both their application and that of the defendant applicants. The plaintiffs filed exceptions and were present on November 25, 1991, to address the commission with regard to the proposed final decisions. On November 25, as the commission concedes in its brief, its staff presented to the plaintiffs substitutions for certain pages in the proposed final decision as to their application, and the commission voted on November 25, 1991, on the proposed decision with the substituted pages, without affording the plaintiffs an opportunity to file exceptions and present briefs as to the changes contained in the substituted pages.

Section 4-179 (a) provides: "When, in an agency proceeding, a majority of the members of the agency who are to render the final decision have not heard the matter or read the record, the decision, if adverse to a party, shall not be rendered until a proposed final decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral argument to the members of the agency who are to render the final decision."

The parties have stipulated that all of the changes in the proposed decision as to the plaintiffs' applica-

tion are set forth below. Words that were removed are in parentheses. Words that were added are italicized.

Page 13: "According to Doctors Deckers and Jacobs, rehabilitation services offered at Hartford Hospital (could be improved) *are assessed average.*"

Page 38, paragraph 2: "Doctor(s) Deckers [and Jacobs] indicated that the delivery of rehabilitation services [at Hartford Hospital could be improved] *in hospital programs in the Hartford area is at best average.*"

Page 38, paragraph 4: "[Therefore, in light of the above, it appears that although a mechanical count of the beds available reveals that a sufficient number of beds labeled 'rehabilitation beds' are available in the Hartford area, the rehabilitation services] *Therefore, the rehabilitation services available in the Hartford area* are fragmented and not operating in an efficient and effective manner."

Page 40, last line: "[218] 138"

Page 50, summary: "[The Hartford area currently has sufficient rehabilitation beds when viewed within the strict parameters of utilization and bed need. However, the] *Rehabilitation* resources are provided in fragmented fashion *in the Hartford area* and hence problems of accessibility and quality have resulted."

The provisions of § 4-179 are similar to those of § 11 of the Uniform Administrative Procedure Act. Uniform Administrative Procedure Act § 11, 15 U.L.A. 259 (1981). The purpose of the provision in that model statute for the opportunity to present exceptions, briefs and argument concerning a decision proposed to a commission by a single hearing officer is "to preclude 'signing on the dotted line' by agency officials; and to ascertain that the persons responsible for the decision have mastered the record, either by hearing the evidence, reading the record, or at the very least review-

ing briefs and hearing oral argument . . . to minimize the risk of fundamental error . . . ." *Tulsa Classroom Teachers Assn.* v. *State Board of Equalization,* 601 P.2d 99, 102 (Okla. 1979).

While a complete failure to issue a proposed decision to the parties has been held to invalidate an agency's ruling; see *Wallace* v. *District Unemployment Compensation Board,* 289 A.2d 885 (D.C. App. 1972); *Turner* v. *Apollonio,* 441 A.2d 679 (Me. 1982); the commission's failure to provide an opportunity for a second round of briefs and exceptions after issuance of textual corrections is readily distinguishable from the situations at issue in those cases.

Whether an additional opportunity for briefs and exceptions is required depends on whether the changes to the original proposed decision are such that they substantially or materially change the proposed decision or introduce new subject matter as to which the applicant had no prior opportunity to comment, such that the purpose of an opportunity to comment, as identified in *Tulsa Classroom Teachers Assn.* v. *State Board of Equalization,* supra, has been undermined.

The changes identified above fit into neither category. The change at pages thirteen and thirty-eight substituted one evaluative description of the services at Hartford Hospital for one of closely equal weight: "could be improved" versus "are assessed average." At page thirty-eight, paragraph two, the correction merely identified one witness rather than two as a source of the proposed conclusion and changed an assessment of the level of rehabilitative services at a particular facility to a general assessment of hospital programs in the Hartford area. Since the plaintiffs had a full opportunity to comment on the need for their proposed services in the context of the existing programs in the Hartford area, this correction merely confirmed a point with which they were not in conflict.

Similarly, with respect to page thirty-eight, paragraph four and page fifty, the plaintiffs had already had an opportunity to file a brief urging a conclusion that medical rehabilitation beds should be increased over the services already existing, and the change in text is not in conflict with the position previously taken by the plaintiffs, who favored a finding that new facilities were needed.

The correction on page forty from "218" to "138" is in the context of a discussion of the plaintiffs' calculations as to the number of new rehabilitation beds needed under a methodology of need developed in New York. The correction reflects the argument of the plaintiffs that 218 such beds were needed and its argument that only thirty-three such beds existed. As it had in its original proposed decision, the commission noted that the plaintiffs had omitted from their calculation 113 beds that the commission considered to be existing medical rehabilitation beds and merely applied that finding to the plaintiffs' claim. The plaintiffs had proposed a facility with ninety new beds, so this correction of the discussion of their argument occasioned no prejudice.

In summary, none of the changes made in the proposed decision were such that the commission was required, in order to fulfill the purposes of § 4-179, to offer a second opportunity for exceptions and briefs.

While the commission also made changes in the proposed final decision as to the defendant applicants, these changes and an opportunity to brief them are not identified by the plaintiffs as grounds for appeal.

The plaintiffs assert in their appeal that the commission as a whole denied their application on the basis of Farrell's recommendation, without reviewing the underlying findings or the record. The plaintiffs

did not brief this claim, and they presented no evidence to support it. The court will therefore treat it as abandoned.

The plaintiffs claim that the commission acted arbitrarily in violation of § 4-183 (j) by failing to treat similarly the evidence on costs savings in their application and that of the defendant applicants and by rejecting the plaintiffs' application on the grounds stated in the commission's decision.

Essentially, the plaintiffs claim that the commission granted the application of the defendant applicants for a certificate of need for a sixty bed facility because of contingent closure of thirty-three general rehabilitation unit beds and twenty-seven acute care beds by those defendant hospitals, but refused to recognize what the plaintiffs characterize as a similar savings in their proposal. The plaintiffs proposed that there would be a savings to the health care delivery systems in devoting already empty psychiatric beds at the facility of the plaintiff Institute of Living to use as rehabilitation beds.

The commission determined that there were 113 existing rehabilitation beds in the Hartford area and assessed the level of utilization of those beds. It also found that Gaylord Hospital, located within twenty-three miles of Hartford, operates 101 comprehensive rehabilitation beds. It granted the defendant applicants' application upon the condition that they close the nine bed rehabilitation unit at Saint Francis Hospital and Medical Center, the twenty-four bed rehabilitation unit at Mount Sinai Hospital, and twenty-seven additional beds for which Mount Sinai was licensed. The plaintiffs claim that in recognizing these closures as creating a savings of thirty-three existing rehabilitation beds, the commission applied a different standard than it had applied to their application, in which they indicated that

the Institute of Living had already closed beds dedicated to psychiatric care. The commission found, however, that the plaintiffs' plan did not include closing any of the ten rehabilitation beds at Hartford Hospital, and there appears to be a reasonable and adequate basis for the commission to have assessed the proposals in the context of ending duplication or fragmentation and looking at the overall resulting number of licensed beds dedicated for rehabilitation patients, rather than crediting bed closures either already achieved or not related to the savings to be realized from the proposals before the commission.

The plaintiffs claim that the commission erred in concluding that greater financial savings with better services would result from granting the defendant applicants' application than from granting their own. In this regard, the plaintiffs clearly ask this court to assess the data and substitute its findings for those of the commission, a course beyond the scope of this court's review, as previously discussed. The findings of the commission support the making of a finding by this court that the agency did not act unreasonably, arbitrarily, illegally or in abuse of its discretion in rejecting the plaintiffs' application when it had before it an application that it reasonably concluded would result in a more efficient improvement of health services. Cost savings are not, moreover, the sole consideration pursuant to § 19a-153.

The plaintiffs also argue that the commission erroneously determined that there is a need for a rehabilitation facility. This is an unusual argument from an applicant who sought a determination that a medical rehabilitation facility of sixty to ninety beds was in fact needed. At any rate, the commission's discussion of the advantages of curing existing fragmentation of services provides an adequate basis for its determination, and

the court will not engage in a trial de novo of the issues when its review is and must be confined to the standards set forth above.

The court finds that the plaintiffs have established no violation of § 4-183 (j).

The court concludes that the plaintiffs have established neither procedural nor substantive reasons to disturb the commission's denial of their application.

The appeal is dismissed.