## Hospital of St. Raphael v. Commission on Hospitals and Health Care

BOGDANSKI, PETERS, PARSKEY, SHEA and DALY, Js.

Argued October 9—decision released November 11, 1980

*Jane S. Scholl,* assistant attorney general, with whom were *Richard J. Lynch,* assistant attorney general, and, on the brief, *Carl R. Ajello,* attorney general, and *Bernard F. McGovern, Jr.,* assistant attorney general, for the appellant (defendant).

*William J. Doyle,* with whom were *J. Michael Eisner* and *Judy A. Rabkin,* for the appellee (plaintiff).

PARSKEY, J. This appeal concerns a request by the Hospital of St. Raphael, a general teaching hospital located in New Haven, to purchase a computerized tomographic total body scanner. Because the scanner's cost exceeded $100,000, approval of this request by the commission on hospitals and health care (commission) was required by General Statutes § 19-73m. The commission denied the request, citing both a present excess capacity for computerized tomographic (CT) scanning in the region and the duplication of services which would ensue if the proposed project were approved. See General Statutes § 19-73k. The hospital appealed[1] this decision to the Superior Court, which reversed, holding that the commission's decision was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; see General Statutes § 4-183g (5); because no workable CT scanner owned by an institution under the commission's control was available for use by the New Haven community. We granted the commission's petition for certification and we reverse.

A CT scanner is a diagnostic device which combines x-ray equipment with a computer and a television monitor to produce images of cross sections of the human body. In documenting its need for the scanner, the hospital contended before the commission that approximately 2000 patients per year

[1] We reject the commission's contention that the hospital was not aggrieved by the commission's decision; see General Statutes § 19-73p; and that, as a result, the trial court did not have jurisdiction over the case. The court found that funds had been earmarked for the purchase of a scanner. It further found that funds had already been expended and space set aside by St. Raphael's to accommodate the scanner. These subordinate facts amply support the court's conclusion that the hospital was aggrieved by the denial of its application.

potentially could benefit from receiving a CT scan at St. Raphael's. Other evidence, however, indicated that fewer than 100 patients were actually transferred to another facility to receive scans. Thirty-five patients could not be moved due to acute head trauma. The balance of the hospital's projected yearly use of the scanner was to be the result of scans performed on patients with intracranial lesions, lymphoma, jaundice and abdominal masses and CT scans performed as an alternative in some cases in which isotopic brain scans are currently performed.

In addition to this evidence of need, the commission also heard evidence of the present scanning capacity provided by CT scanners in other facilities in the New Haven area. Yale-New Haven Hospital presently has two CT scanners. One is not functional except for occasional emergency use, although Yale-New Haven is planning to submit a proposal to update this scanner. The other scanner is not owned by Yale-New Haven, but is presently on loan from the manufacturer primarily for research purposes. Because this scanner is the only one at Yale-New Haven Hospital in good working condition, it is presently being used clinically. A third CT scanner in the region is operated by a private group of radiological physicians, Temple Radiology Group. This scanner is currently operating at approximately one-third of its capacity. It could be used for over 2000 additional scans per year, although its maximum utilization is inhibited because not every health insurance carrier reimburses patients for scans performed at this facility. On the basis of this evidence concerning regional CT scanning capacity, the commission denied St. Raphael's request for the purchase of a CT scanner.

In reversing the commission's decision, the court below focused primarily on the fact that the use of the scanner operated by the private radiological group was outside the commission's jurisdiction. Because the commission could not regulate the extent of the availability of this scanner, the court disregarded it for purposes of ascertaining regional capacity. The court similarly disregarded both scanners at Yale-New Haven, one because it was not working and the other because Yale-New Haven did not own it. Concluding that no workable scanner was owned by an institution under the control of the commission, the court held that the commission's decision denying the St. Raphael request was clearly erroneous.

The commission is charged by law with the responsibility for approving capital expenditures of $100,000 or more by health care facilities or institutions. General Statutes § 19-73m. Hospitals are specifically included within the meaning of health care facilities or institutions. General Statutes § 19-73b. In reviewing a request for such a capital expenditure, the commission is directed to "consider such request in relation to the community or regional need for such capital program, the possible effect on the operating costs of the health care facility or institution, the recommendations of the Health Systems Agency regarding such proposal, and such other relevant factors as the commission deems necessary." General Statutes § 19-73m. In addition, the commission is directed to consider the effectiveness of the facility's delivery of health care services, the quality of available health care and the duplication of service by institutions and facilities in the area served. General Statutes § 19-73k. In its consideration of the foregoing fac-

tors in this case the commission concluded that the region had excess capacity and the proposed services would duplicate services provided by the health care facilities which in the aggregate are operating at less than full capacity.

In reviewing the action of an administrative agency the trial court must accept the evidence presented to such agency uncoated by any judicial gloss. "Conclusions reached by an administrative body must be upheld by the court if they are supported by the evidence that was before the administrative body. *Balch Pontiac-Buick, Inc.* v. *Commissioner of Motor Vehicles,* 165 Conn. 559, 563, 345 A.2d 520. The credibility of witnesses and the determination of issues of fact are matters within the province of the administrative agency. *Jaffe* v. *State Department of Health,* 135 Conn. 339, 343, 64 A.2d 330. It is not the function of the court to retry the case. The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken. *Conley* v. *Board of Education,* 143 Conn. 488, 492, 123 A.2d 747." *Williams* v. *Liquor Control Commission,* 175 Conn. 409, 414, 399 A.2d 834 (1978).

The trial court recognized that in reviewing the commission's action it was precluded from substituting its judgment for that of the commission as to the weight of the evidence on questions of fact. General Statutes § 4-183 (g). Rather than challenge directly the commission's factual conclusion of excess regional scanning capacity, the trial court reevaluated the evidence on the basis of its interpretation of the pertinent statutes. Specifically, the trial court took the view that "duplication of

service by institutions and facilities in the area served"; General Statutes § 19-73k (a); must be construed to mean duplication of services provided by facilities over which the commission had regulatory power to control access and availability. The court also held that any duplication which resulted from equipment not owned by such a facility could not be taken into account under § 19-73k.

In arriving at its conclusion of excess regional scanner capacity, the commission included the CT scanner used by Temple Radiology Group, an organization of private physicians, and the two scanners at Yale-New Haven Hospital. The court concluded that the Temple scanner could not be considered because that group was not subject to regulation by the commission and that the two scanners at Yale-New Haven could not be considered because one was not functional except on an emergency basis and the other was not owned by the hospital. The second Yale-New Haven scanner was on loan principally for research purposes, but was in fact being utilized for clinical purposes.

There is nothing in the statutory scheme which limits the commission to a consideration of only such units which are owned by regulated health care facilities. In arriving at its finding of regional need, the commission may consider all units available for medical use by the general public whether operated by regulated or by nonregulated health care facilities. If a unit is on loan for a limited purpose such as research but is in fact also used for clinical purposes, it is for the commission to weigh this factor in its deliberations and to determine to what extent, if any, it would discount the availability of such unit because of the purported limited nature of its use.

The commission could hardly ignore the fact that the Temple scanner was operating at one-third capacity and that it was available for use by a substantial number of ambulatory patients of St. Raphael's.

We are not suggesting that, despite the availability of scanners at Temple and Yale-New Haven, the commission would not have been justified in approving the plaintiff's application. The record discloses several factors which could impede the use of the scanners at either place. The Temple scanner, for example, was available for limited use on an outpatient basis. It was not available during evenings, nights and weekends, and would not be available for seriously ill patients who could not be moved or for emergency cases. Moreover, Temple required a nurse to accompany every patient who was transported there for a scan. The use of the Yale-New Haven scanner presented the problem of delay, nine days for inpatients and about three weeks for outpatients. Delays in scans would increase the hospital stays for inpatients. Prompt diagnosis and appropriate therapy provide the greatest assurance of reduced morbidity and mortality for neurosurgical patients.

In balancing these factors against the potential duplication of services, the commission could well have concluded that the improvement in the quality of care at St. Raphael's resulting from the availability of its own scanner outweighed whatever savings might accrue from avoiding a duplication of services, especially in light of the negative factors involved in compelling patients at St. Raphael's to avail themselves of scanners at Temple and Yale-

New Haven. But that conclusion was for the commission to reach. Its contrary conclusion is not subject to judicial reversal on the facts of this case.

The hospital contended before the trial court that the commission's denial of the scanner application resulted in St. Raphael's being denied the equal protection of the laws. See U.S. Const., amend XIV. In renewing that argument on appeal, the hospital does not directly attack the pertinent statutes claiming that they are facially invalid. Instead, the hospital maintains that the statute has been unequally applied in the sense that the commission denied the application in the present case even though it had approved other scanner applications submitted by hospitals with qualifications and needs allegedly equal to or less than those of St. Raphael's. This argument misses the mark because no evidence of purposeful discrimination was ever presented in this case. See *Snowden* v. *Hughes*, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L. Ed. 497 (1944); *Briscoe* v. *Kusper*, 435 F.2d 1046, 1052 (7th Cir. 1970). An equal protection claim based on unequal application of the law does not arise from conclusory allegations regarding past decisions, but rather must be established by competent evidence. The bare fact that certain scanner applications in the past were approved, while the present application was denied, does not approach the required evidentiary burden imposed on a party claiming discriminatory enforcement.

The final claim raised by the hospital before the lower court and presented to us as an alternative ground for upholding the result reached below concerns certain guidelines which the plaintiff maintains formed the basis of the commission's action in

denying the application. It is clear that informal guidelines, promulgated outside the rulemaking framework of the Uniform Administrative Procedure Act; General Statutes §§ 4-166 through 4-189; may not be applied as substantive rules. *Salmon Brook Convalescent Home* v. *Commission on Hospitals & Health Care,* 177 Conn. 356, 368, 417 A.2d 358 (1979). It is equally clear, however, that the commission in the present case did not apply the informal guidelines as regulations in considering the plaintiff's application. The only guidelines that the plaintiff did not meet concerned the number of intracranial operations being performed. The guideline was set at fifty per year; thirty-five per year were performed at St. Raphael's. This shortfall, however, played no role in the commission's ultimate decision on the application. That decision was plainly grounded on regional excess scanning capacity and the duplication of services that would result from another scanner being added to the New Haven area.

There is error, the judgment is vacated and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other judges concurred.