[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Wilbert Peart appeals the decision of the psychiatric security review board denying his application for transfer from Whiting Forensic Institute (Institute) CT Page 5424 to a less restrictive facility. The board acted pursuant to General Statutes § 17a-584. The plaintiff appeals pursuant to §§ 17a-597 and 4-183.
The court commends counsel for both parties for the quality of their briefs and oral argument, noting especially that this case raises issues of first impression involving the psychiatric security review board. Counsels' efforts were extremely helpful to the court.
In September 1991, the board committed the plaintiff to the Institute after he was acquitted in the Superior Court at Litchfield of the charge of arson in the first degree by reason of mental disease or defect. The Institute is the state's maximum security and most restrictive hospital for persons acquitted of crimes on that basis.
The facts underlying the arson charge were that the plaintiff set fire to a building while he was inside it, with the intention of committing suicide. He was then eighteen years old. Prior to that event, the plaintiff had suffered an extremely traumatic childhood and adolescence, including commitments to various institutions.
In March 1994, doctors on the Institute staff contacted the board to suggest that the plaintiff be transferred to a less restrictive facility. This triggered the board's review of the plaintiff's condition pursuant to § 17a-585. That statute requires that the board conduct a hearing on the proposal. Section 17a-596
governs the hearing procedure. Subsection (b) of § 17a-596
provides as follows:
 (b) The board shall consider all evidence available to it that is material, relevant and reliable regarding the issues before the board. Such evidence may include but is not limited to the record of trial, the information supplied by the state's attorney or by any other interested party, including the acquittee, and information concerning the acquittee's mental condition and the entire psychiatric and criminal history of the CT Page 5425 acquittee.
Subsection (f) of § 17a-596 provides that anyone seeking the transfer of a patient to a less restrictive facility has "the burden of proving by a preponderance of the evidence the existence of conditions warranting a less restrictive order."
Following the required hearing, pursuant to § 17a-584, the board must "make a finding as to the mental condition of the acquittee." Based on that finding and "considering that its primary concern is the protection of society," the board may (1) recommend that the court discharge the person; (2) order the person's release subject to conditions necessary to prevent the person from being a danger to himself or others; or (3) order the person to be confined in a hospital for mental illness.
In May 1994, the board conducted the hearing on the Institute's request for the plaintiff's transfer to a less restrictive hospital. Evidence at the hearing consisted of testimony of two staff doctors at the Institute, one doctor from Fairfield Hills Hospital, and transcripts and exhibits introduced at previous hearings in 1991 and 1993. These materials, which are part of the record under seal and which the court has examined, describe the plaintiff's psychiatric, social and legal history in considerable detail.
The two Institute doctors who treated the plaintiff during his confinement testified that the plaintiff had responded well to treatment since his confinement in the Institute and that it was their professional opinion that the plaintiff would no longer pose a danger to himself or others if he were transferred to Fairfield Hills Hospital for continued inpatient psychiatric treatment and supervision. Fairfield Hills is a less restrictive hospital than the Institute.
The third doctor, from the Fairfield Hills facility, testified concerning the plaintiff's selection of clothing and whether it indicated the plaintiff harbored an inappropriate desire to demonstrate his superiority over other people. The clothing issue arose because there was evidence that in the past the plaintiff wore clothes and insignia indicating a militant belief in white racial supremacy. The Fairfield Hills doctor testified that he CT Page 5426 did not consider the clothing issue to be significant at this time. He stated further that he believed that he and the staff at Fairfield Hills could treat the plaintiff effectively. Therefore, he also recommended the transfer.
There was no other evidence; in particular, there was no expert testimony contesting the opinions of the Institute and Fairfield Hills doctors.
Following the hearing, on June 27, 1994, the board rendered its decision. In its decision, the board summarized the evidence, including the testimony of the Institute doctors that the plaintiff was responding well to treatment and that they recommended his transfer. The board also referred to evidence, some of it from his history, that the plaintiff had gone AWOL from institutions in the past, that he was not an active participant in social activities and interpersonal relationships at the Institute, that he wore questionable clothing to a Fairfield Hills Hospital interview. The board stated that "There was testimony that Mr. Peart wears symbols of white supremacist groups." The board noted testimony of the doctors to the effect that the plaintiff could still regress and that his therapists would have to be alert to signs of regression that would require continued confinement in a maximum security institution.
The board concluded that the plaintiff still constituted a danger to himself and others and ordered that he continue to be confined at the Institute.
The sole basis of the plaintiff's appeal is that the board wrongfully ignored the testimony of the expert witnesses; that is, the three doctors, and in effect substituted its judgment for theirs, citing Tanner v.Conservation Commission, 15 Conn. App. 336 (1988). The plaintiff argues that the board was obliged to follow the rule of substantial evidence and that there was no such evidence to support its findings and conclusions. In support of that argument, the plaintiff closely analyzes the board's findings and points to contradictions between those findings and the opinions of the doctors who testified at the hearing. CT Page 5427
The plaintiff makes a strong argument but it essentially relies on Tanner v. Conservation Commission,
supra, and the rule in that case does not apply here. InTanner, the Appellate Court held
 that the commission, in dealing with complex issues, ignored the testimony of the expert witnesses and relied solely on their own insight. . . While we recognize that an administrative agency is not required to believe any of the witnesses, including expert witnesses; . . . it must not disregard the only expert evidence available on the issue when the commission members lack their own expertise or knowledge . . . We find there was no substantial evidence since there was an absolute disregard of the unanimous contrary expert opinion.
(Citations omitted.) (Emphasis added.) 15 Conn. App. 341.
The rule is different when the majority of the members of the agency deciding a case are experts in the subject matter under review. In such a case, they may use their own expertise in evaluating the evidence. Any party may, of course, present its own expert witnesses, but the agency may accept or disregard their testimony, even if they are the only experts to testify. Pet v. Departmentof Health Services, 228 Conn. 651, 666-667 (1994);Levinson v. Board of Chiropractic Examiners, 211 Conn. 508,525 (1989); Jaffe v. Department of Health, 135 Conn. 339,350-351 (1949).
This rule finds support in the Uniform Administrative Procedure Act. General Statutes § 4-178 (8) provides that "the agency's experience, technical competence, and specialized knowledge may be used in the evaluation of the evidence."
To determine whether the rule of the Pet, Levinson
and Jaffe cases pertains to this case, it is necessary to examine the composition of the board and the nature of the subject matter of its deliberations.
Pursuant to General Statutes § 17a-581 (b), the CT Page 5428 psychiatric security review board consists of five members: a psychiatrist experienced with the criminal justice system; a psychologist with similar experience; a person with substantial experience with the probation system; an attorney at law; and a member of the general public.
The task of the board in considering the release or transfer of an acquittee is to "make a finding as to the mental condition of the acquittee" and, in doing so, "consider(ing) that its primary concern is the protection of society." General Statutes § 17a-584. In a case raising essentially the same issue, the release from hospital, pursuant to General Statutes (Rev. to 1983) § 53a-47, of a criminal defendant who had been acquitted by reason of mental illness, our Supreme Court held that the determination of mental illness and "dangerousness" in the context of a decision on hospital confinement "reflects a societal rather than a medical judgment, in which the rights and needs of the defendant must be balanced against the security interests of society."State v. Putnoki, 200 Conn. 208, 221 (1986). In that case, the Supreme Court held that "although psychiatric testimony as to the defendant's condition may form an important part of the trial court's ultimate determination, the court is not bound by this evidence. . . In reaching its difficult decision, the court may and should consider the entire record available to it, including the defendant's history of mental illness, his present and past diagnosis, his past violent behavior, the nature of the offense for which he was prosecuted, the need for continued medication and therapy, and the prospects for supervision if released." Id.
The psychiatric security review board in the present case, like the trial court in the Putnoki case, had to determine the plaintiff's mental condition and his dangerousness to himself and others. In doing so, the board was required by § 17a-596 to consider all of the evidence before it, not just the testimony of the Institute's experts. The board was then required to make a decision concerning the plaintiff's continued confinement or conditional release, reflecting a societal rather than a purely medical judgment. As noted, the CT Page 5429 majority of the board was composed of a psychiatrist, a psychologist, an expert in probation, and an attorney. The court holds that these are experts in the subject matter that was under review; that is, the plaintiff's continuing hospital status, based on his mental condition and with primary consideration given to the protection of society. Accordingly, they were entitled to use their own expertise on that subject matter in evaluating the testimony of the three doctors at the hearing. Specifically, they were free to accept or reject that testimony, in whole or in part, and give it what weight they deemed appropriate.
As a corollary to his principal argument, the plaintiff argues that if the board used its own expertise as the basis for rejecting the testimony of the doctors, it was required to "reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal at an appropriate stage in the administrative proceedings," citing Feinson v. Conservation Commission, 180 Conn. 421,428 (1980). See also General Statutes §§ 4-178 (6) and (7), which provide that an agency may take notice of "generally recognized technical or scientific facts within the agency's specialized knowledge," but in such case, the agency must notify parties so as to give them an opportunity to contest those facts.
As indicated above, General Statutes § 17a-581 (b) prescribes the composition of the board and the qualifications and experience of its members. That provides sufficient notice of the special knowledge and experience of the board members to comport with the rule in Feinson.
General Statutes § 4-178 (6) and (7) do not apply to the actions and deliberations of the board in this case. The board's final decision makes clear that the members were using their special knowledge and experience to evaluate the doctors' testimony, but there is nothing in that decision to indicate that the board members based it on any specific scientific facts undisclosed to the plaintiff. It is clear, rather, that they based their decision in large part on the plaintiff's past history CT Page 5430 and their professional judgment that he had still not progressed sufficiently to be transferred to a less restrictive setting. In short, the decision was based on the agency's evaluation of the evidence that was in the record rather than on any scientific facts that were within its knowledge but which were undisclosed.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that (t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion."Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991). Similarly, "(w)ith regard to questions of fact, it is (not) the function of the trial court . . . to retry the case or to substitute its judgement for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital ofSt. Raphael v. Commission on Hospitals Health Care,182 Conn. 314, 318 (1980).
In the present case, the Institute and the plaintiff had the burden of proving to the board that the plaintiff's mental condition warranted confinement in a less restrictive facility than the Institute. There was evidence on both sides of the question. The board determined that the plaintiff's evidence did not sustain his burden of proof; that is, in the board's judgment, the plaintiff's evidence did not outweigh other evidence in the record to the contrary. The court has found that the board's deliberations were performed in accordance with the requirements of § 4-178 and the law enunciated by our courts. The court may not substitute its judgment for that of the board, therefore, and must affirm the board's decision.
The appeal is dismissed. CT Page 5431
MALONEY, J.