[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff Robert C. Williams appeals the decision of the defendant board of firearms permit examiners sustaining the revocation of his permit to carry a pistol by the commissioner of public safety. The board and commissioner acted pursuant to General Statutes §§ 29-32 and 29-32b. The plaintiff appeals the board's decision pursuant to §§ 29-32b(f) and 4-183. The court finds the issues in favor of the defendant board.
In its decision, the board made certain findings of fact, most of which were not disputed by the plaintiff. Those facts and CT Page 6205 other undisputed facts in the record are as follows. On September 13, 1994, the plaintiff, who is African-American, was on his own property in North Haven when he heard a white male teenager across the street utter a racial slur aimed at him. The youth was with a group of youths between the approximate ages of eighteen to twenty. The plaintiff started across the street to confront the young man, then went back to his car and got In its decision, the board made certain findings of fact, most of which were not disputed by the plaintiff. Those facts and other undisputed facts in the record are as follows. On September 13, 1994, the plaintiff, who is African-American, was on his own property in North Haven when he heard a white male teenager across the street utter a racial slur aimed at him. The youth was with a group of youths between the approximate ages of eighteen to twenty. The plaintiff started across the street to confront the young man, then went back to his car and got his gun. Then he went over to the other property and engaged in a discussion with the youths. One of them attempted to leave in his own car, and the plaintiff stopped him, telling him he would shoot out his tires. Then, in response to a question about the gun, the plaintiff stated that it was a real gun and demonstrated that it was by ejecting bullets from it. The incident ended with discussions between the plaintiff and parents of the youths involved. Although the police investigated the incident, they did not arrest anyone. Subsequently, however, the chief of police of North Haven notified the department of public safety about the incident and recommended that the department revoke the plaintiff's pistol permit. The department did so, and the plaintiff appealed to the board.
The plaintiff is a fifty-four old school teacher and former auxiliary police officer. He has had formal training in the use of firearms. At the time of the incident, he was an elected member of the North Haven Board of Police Commissioners, which oversees the operations of the police department. He has no criminal record. At the administrative hearing in this case, the former chief of police of North Haven and two other witnesses testified as to his good character and suitability to have a pistol permit. There were no adverse witnesses.
The only other witness was the plaintiff. In his testimony, he described the incident with the youths, including his feelings of anger and apprehension. He also stated that he made an error in judgment in taking his gun with him when he confronted the youths. Otherwise, he disclaimed any intention to use the gun CT Page 6206 unless it was necessary to protect himself.
The board, in its findings of fact, found that the plaintiff "knew or should have known (that the confrontation with the youths) would be a tense situation." The board concluded that "there is just and proper cause for the revocation of a pistol permit because, based upon the facts produced at the hearing, the (plaintiff) is not a suitable person." The board therefore sustained the revocation of the permit.
In his brief and at the hearing on this appeal, the plaintiff raises essentially a single argument: that there was insufficient evidence to support the board's decision or that the decision was contrary to the evidence and, therefore, arbitrary and an abuse of discretion. In particular, the plaintiff argues that there was no evidence that his confrontation with the youths was tense. He argues further that there was no other evidence that he is not suitable to hold a pistol permit and that the board's discretion is not "unbridled."
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably arbitrarily, illegally, or in abuse of its discretion." Conn. Light PowerCo. v. Dept. of Public Utility Control, 219 Conn. 51, 57 — 58 (1991). Similarly, "(w)ith regard to questions of fact, it is (not) the function of the trial court . . . to retry the case or to substitute its judgement for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St.Raphael v. Commission on Hospitals Health Care, 182 Conn. 314,318 (1980).
In the present case, contrary to the plaintiff's argument on appeal, there was ample evidence, including the plaintiff's own testimony, that the situation was "tense." The plaintiff crossed the street to confront the youths because of a racial slur directed at him. He testified that he went to get his gun at least in part because he feared for his safety. He emphasized the CT Page 6207 physical size of the youths and that he was apprehensive because one of them ran and ducked behind a car, concealing himself. All of that is evidence that the situation was indeed "tense" in the ordinary sense of the term. In accordance with the principles of administrative law summarized above, the court cannot disturb the board's finding in that regard.
The plaintiff's real quarrel with the decision is that it is arbitrary and an abuse of discretion in that his admitted conduct at the time in question should not, in his view, afford a basis for revocation of his pistol permit.
General Statutes 29-32 establishes the summary procedure by which either the local authority or the commissioner may revoke a permit. "Any permit for the carrying of any pistol or revolver may be revoked by the authority issuing the same for cause and shall be revoked by the authority issuing the same upon conviction of the holder of such permit of a felony." Section29-32b(b) sets forth the standards for the board to follow in reviewing a revocation of a permit by the local authority or the commissioner. "On such appeal the board shall inquire into and determine the facts, de novo, and unless it finds that such . . . revocation . . . would be for just and proper cause, it shall order such permit to be . . . restored . . . ."
As the board indicates in its decision, and argues in its brief to this court, it considers that a determination that an individual is not "a suitable person," in the language of 29-28, is cause for revocation of a permit under 29-32.
In the present case, the board concluded as a matter of law that the plaintiff is an "unsuitable person." The term "suitable" is nowhere specifically defined in the pistol permit laws nor does the term "unsuitable person", as used in the board's decision, appear anywhere in the applicable statutes. In its brief to the court on this appeal, the board cites Smith's Appealfrom County Commissioners, 65 Conn. 135, 138 (1894) holding, in part, as follows:
 The word "suitable" as descriptive of an applicant for (a liquor) license under the statute, is insusceptible of any legal definition that wholly excludes the personal views of the tribunal authorized to determine the suitability of the applicant. A person is CT Page 6208 "suitable" who by reason of his character his reputation in the community, his previous conduct as a licensee — is shown to be suited or adapted to the orderly conduct of [an activity] which the law regards as so dangerous to public welfare that its transaction by any other than a carefully selected person duly licensed is made a criminal offense. It is patent that the adaptability of any person to such [an activity] depends upon facts and circumstances that may be indicated but cannot be fully defined by law, whose probative force will differ in different cases, and must in each case depend largely upon the sound judgment of the selecting tribunal. (Emphasis added).
In the present case, the board based its decision that the plaintiff is not suitable to have a license to carry a pistol on the express findings of fact that he took his gun with him to a tense situation, that he threatened to shoot it at someone's car, and that he displayed the gun to someone with whom he was having a dispute. Also in evidence was the plaintiff's own admission that he exercised bad judgment with regard to the gun. The board weighed all of that undisputed evidence more heavily in reaching its decision than it weighed other evidence, likewise undisputed, that the plaintiff has an unblemished record and a reputation for good character and public service and that this was a single incident of bad judgment on his part.
As indicated above, familiar principles of administrative law prohibit this court from substituting its judgment for that of the board unless it is shown that the board acted on insufficient evidence or that its decision was otherwise arbitrary or an abuse of discretion. Clearly, the board had evidence of bad judgment by the plaintiff in the use of a firearm; he admitted as much during the administrative hearing. If the court were to overrule the board and hold, in effect, that such an instance of bad judgment is not sufficient basis to revoke a gun permit, the court would in effect be substituting its judgment and discretion for that of administrative law prohibit this court from substituting its judgment for that of the board unless it is shown that the board acted on insufficient evidence or that its decision was otherwise arbitrary or an abuse of discretion. Clearly, the board had CT Page 6209 evidence of bad judgment by the plaintiff in the use of a firearm; he admitted as much during the administrative hearing. If the court were to overrule the board and hold, in effect, that such an instance of bad judgment is not sufficient basis to revoke a gun permit, the court would in effect be substituting its judgment and discretion for that of the board.
Substitution of the court's judgment for that of the board would be particularly inappropriate in this case because the board's decision was based on its interpretation of statutes that it is responsible for enforcing. "Although the construction and interpretation of a statute is a question of law for the courts to decide . . . it is a well established practice of (the) court to accord great deference to the construction given (a) statute by the agency charged with its enforcement." Starr v.Commissioner of Environmental Protection, 226 Conn. 358, 372
(1993). The Smith's Appeal from County Commissioners case, supra, affords further latitude to an agency, such as the board, that is responsible for determining whether someone is statutorily "suitable" to hold a license to engage in a potentially dangerous activity. Under these circumstances, the court cannot find that the board's interpretation, although arguably harsh in its effect, was unreasonable.
In summary, the court concludes that the board's decision was based on substantial evidence in the record and on its own interpretation of statutes that it is responsible for enforcing. The court also concludes that in the factual context of this case, the board's interpretation was not unreasonable. Accordingly, the court cannot disturb the decision of the board even if a different interpretation of the statutes, which might lead to a different result, could be considered equally reasonable. Starr v. Commissioner, supra, 226 Conn. 376.
The appeal is dismissed.
MALONEY, J.