[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Lynette Blikre, appeals from the determination of an investigator of the Commission on Human Rights and Opportunities ("CHRO") that her complaint sexual harassment at her place of employment was not supported by reasonable cause and should therefore be dismissed without a hearing.
An appeal from such a dismissal is authorized by General Statutes § 46a-83a. The court finds that the plaintiff is aggrieved by the dismissal of her complaint.
The plaintiff objects that the finding of the CHRO is arbitrary and capricious and is not supported by substantial evidence.
Procedural History
On or about April 9, 1992, the plaintiff filed a complaint with the CHRO stating that she had been discriminated against on the basis of sex and had been constructively discharged from her employment as a waitress at the Terra Ristorante Italiano ("Terra restaurant") in Greenwich. The plaintiff named as co-respondents the two owners of the restaurant, Ramze Zakka and Paul Ardaji.
The plaintiff's administrative complaint is a joint complaint in which another employee, Allison McNay, is also identified as a complainant. Some of the paragraphs of the complaint contain allegations of sexual harassment of Ms. McNay; others contain allegations of incidents involving the plaintiff. Only the complaint and claims of Lynette Blikre are before this court on appeal. CT Page 12559
In her administrative complaint, Ms. Blikre alleged that she was hired to work primarily as a bartender at Terra in October 1991 and that the respondents sexually harassed her through suggestive comments and conduct to the point that on March 16, 1992 she left her job to avoid sexually discriminatory working conditions. The plaintiff alleged violation of General Statutes § 46a-60(a)(8). Section 46a-60(a)(8) provides inter alia that it is a discriminatory practice for an employer to engage in any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when such conduct has the purpose or effect of creating an intimidating, hostile or offensive working environment. Specifically, Ms. Blikre alleged that within a few weeks of her commencing employment, the respondents subjected her to sexually oriented remarks and contact. Specifically, she stated that while she was working behind the bar the respondents came into her work area and "pressed themselves against me so that their sexual organs would press against my buttocks." (Complaint, para. 12.) She also alleged that the respondents "fondled [her] by placing their hands by [her] breasts and on [her] buttocks" (Complaint, para. 10); that respondent Zakka made comments about her breasts (Complaint, para. 14); and that he made comments insinuating that he took and would like to pursue a sexual interest in her particularly after she had brought her boyfriend to the restaurant (Complaint, paras. 13, 17). Ms. Blikre complained that the respondent's comments and conduct created a hostile and intimidating work environment and that she was distressed by these working conditions to the point that she felt forced to resign (Complaint, para. 20).
The plaintiff provided additional details in response to interrogatories sent to her by the CHRO investigator assigned to her complaint, John Rashied. (Record, page 68) She did not claim that the conduct complained of had taken place in front of other employees or in front of customers of the restaurant. The plaintiff did not state that she had discussed the respondents' alleged conduct with any fellow employee other than Jon Posniak-Galf and Allison McNay. Ms. McNay, who consulted counsel and left the respondents' employ at the same time as the plaintiff, complained to the CHRO that she had also been subjected to sexual remarks, sexually related comments on her appearance, and sexually suggestive touching by the respondents during the same period. Both Blikre and McNay were awarded unemployment compensation benefits by a hearing officer upon a finding that they had justifiably left employment. CT Page 12560
The plaintiff noted that she stayed on at her job for awhile despite the situation because she was earning between $800-$1000 per week, mostly in tips.
The plaintiff informed the investigator that the restaurant had only five female employees: herself, two waitresses (of whom one was Ms. McNay), a coat checker, Laurie Brooks, and a dining room manager, Nina Djerejian. (Record, page 325) Respondent Ardaji confirmed that he employed only "four to five" females during the plaintiff's employment (Record, tape of Paul Ardaji interview)
The plaintiff listed and provided the telephone numbers of three former employees of the restaurant whom she indicated had heard the respondents make sexual comments or sexually taunt female employees. (Record, p. 392.) These witnesses were Jon Posniak-Galf, Nina Djerejian, and Laurie Brooks.
On September 25, 1992, the CHRO investigator notified plaintiff's counsel that he had had "no success(es) in contacting complainant witnesses — Brooks, Djerejian and Pozniak" and gave plaintiff's counsel a week to provide the names of "additional witnesses, if available." (Record, p. 446.)
On November 10, 1992, the investigator, Mr. Rashied, issued a draft finding (Record, p. 378) in which he concluded that there was no reasonable cause to find discrimination. Mr. Rashied stated in his report that he had reached this conclusion because the complaints "had not presented supportive evidence, nor witnesses to corroborate their charges of sexual harassment . . ." and that the Commission had received "an overwhelming preponderance of evidence supportive of the respondents' position of denial". (Record, p. 38.) He had not interviewed Ms. McNay when he made this report of a finding of no reasonable cause.
The plaintiff complained by her counsel (Record, pp. 371-374) that the investigator had failed to speak to the witnesses named by the plaintiff, had ignored the testimony of the plaintiff and the supporting testimony of Ms. McNay, and had depended on the fact that one witness who had never been identified as having witnessed the incidents at issue failed to corroborate them. Counsel for the plaintiff noted that she had complained that the investigator was "obstructionist" and "belligerent" toward the plaintiff and her counsel and that counsel had written two CT Page 12561 letters to the chairperson of the CHRO, Leslie Brett, complaining of the investigator's hostile treatment. (Record, pp. 336, 334.) She asked that the case be assigned to a "more objective" investigator. (Record, p. 374.) The CHRO issued Mr. Rashied's report as a final determination on December 1, 1992.
By a letter dated December 11, 1992, the plaintiff requested reconsideration.
By a letter dated June 11, 1993, the CHRO advised the plaintiff that it had granted her request for reconsideration and had assigned the complaint to a new investigator. That investigator, Mary Moore, received remand instructions from staff counsel, Robert Zambowski. In those instructions, Attorney Zambowski pointed out that it was necessary to interview Ms. McNay, to speak to those named by the complainant as witnesses, and not to attach importance to a lack of corroboration by an employee not identified as being a corroborating witness. (Record, p. 142.)
Ms. McNay was interviewed by the CHRO investigator. She confirmed that she was an additional employee who had experienced sexual remarks and unwelcome sexual contact at the workplace. She stated that the respondents' sexual comment and contact with her took place when there were no other employees around to witness their behavior and that she had not witnessed any of the incidents identified by Ms. Blikre. (Record, p. 89.)
The CHRO interviewer questioned the respondents, their wives, and Lorivalde Nascimento at the restaurant in the presence of the respondents' attorney. Tapes of the interviews indicate that the investigator allowed the attorney to conduct much of the questioning.
On April 13, 1994, the investigator, Ms. Moore, issued a finding of no reasonable cause (Record, p. 123), and the plaintiff has appealed from that finding.
Standard of Review
In an appeal from a finding of "no reasonable cause" by the CHRO, the court is required "to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." Adriani v. Commission on HumanCT Page 12562Rights and Opportunities, 220 Conn. 307, 315 (1991); ConnecticutLight Power Co. v. Department of Public Utility Control,216 Conn. 627, 639 (1990); Board of Education v. Commission on HumanRights and Opportunities, 176 Conn. 533, 538 (1979). The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken. Hospital of St. Raphael v. Commission onHospitals and Health Care, 182 Conn. 314, 318 (1980). "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be upheld. Connecticut Building Wrecking Co. v.Carothers, 218 Conn. 580, 601 (1991). The substantial evidence standard is satisfied if the record provides a "substantial basis of facts from which the facts in issue can be reasonably inferred. . . ." Lawrence v. Kozlowski, 176 Conn. 705, 713, cert.denied, 431 U.S. 969 (1977). This "substantial evidence rule" is embodied in General Statutes § 4-183(j)(5) and (6). Newtownv. Keeney, 234 Conn. 312, 320 (1995).
The Supreme Court has ruled that the CHRO's determination as to the credibility of witnesses may play a part in its finding.Adriani, 220 Conn. 317.
Reasonable Cause
Both the CHRO and the respondents have briefed and argued this appeal in a manner which suggests that in order to be entitled to a finding of reasonable cause, a complainant must secure investigative findings sufficient to support an actual finding of discrimination, that is, proof by a preponderance of the evidence. A finding of no reasonable cause by an investigator "effectively ends the claimant's quest for justice" Adriani v.Commission On Human Rights and Opportunity, 220 Conn. 307, 331
(1991) because such a finding means that no adjudicative hearing is held. General Statute § 46a-83 does not, however, require a complainant to prove her case to an investigator by a preponderance of the evidence: rather, that statute provides that a complainant is entitled to a hearing upon a finding of "reasonable cause." "Reasonable cause" is defined in § 46a-893 as "a bona fide belief that the material issues of fact are such that a person of ordinary caution, prudence and judgmentcould believe the facts alleged in the complaint." [emphasis supplied]. The statutory definition thus does not allow an investigator to end a case simply because not all of the evidence favors the complainant's account or because the investigator does CT Page 12563 not find that the evidence preponderates in favor of the complainant. Rather the enforcement statute allows investigators to dismiss only those cases in which a person of ordinary caution and prudence and judgment could not believe the facts alleged. Cases in which the evidence in part supports the complainant and in part supports the respondent are not to be terminated if a reasonable person "could believe the facts alleged."
The task before this court is, therefore, to determine whether there is substantial evidence in the record to support a finding that a reasonable person could not believe the facts alleged.
Discussion
According to the principles set forth above, the court must inspect the findings and record to determine whether the investigator's conclusion rests on a substantial basis of fact and whether the inferences and conclusions drawn from those facts are reasonable as a basis for making a finding of no reasonable cause. Adriani, supra, 220 Conn. 315. Where the agency's report fails to identify substantial evidence, the court is required to inspect the record to determine if it is present. Newtown v.Keeney, 234 Conn. 321.
This court finds that the CHRO has come to conclusions and inferences that are not supported by substantial evidence, that the investigator unreasonably failed to give weight to substantial supporting evidence and depended upon surmise, conjecture, and inferences that were irrelevant to the actual allegations of the complaint, and that the CHRO has imposed requirements of eye witness corroboration and widespread complaint about sexual harassment that are not required by the law.
The investigator's analysis of the reasons to find no reasonable cause is set forth at pages 128 and 129 of the record.
The findings and analysis of the CHRO rest on three points:
1. the size of the bar area;
2. the hypothesis that certain other employee and customers were present when the conduct occurred; CT Page 12564
3. a presumption that an employee experiencing sexual harassment will confide in many other employees or the harasser's wife.
The CHRO inferred that the restaurant's work areas were so small that sexual remarks could not be made and sexual contact could not occur without detection by customers or observation by co-worker Lorivalde "Pimbo" Nascimento, who made pizzas in the same work area the plaintiff occupied. The CHRO reviewer who had approved the plaintiff's request for reconsideration specifically directed the new investigator not to rely on non-corroboration by Nascimento since it was not alleged that any of the conduct complained of had occurred in his presence (Record, p. 142). Despite this express instruction, the non-corroboration of Mr. Nascimento was part of the reason for the CHRO's finding of no reasonable cause. (Record, page 128).
The record does not indicate that the plaintiff or Ms. McNay ever stated that sexual harassment took place while customers were present or that any one of the incidents had occurred when Mr. Nascimento was present. Ms. McNay emphatically stated that all the incidents that had happened to her took place quickly and furtively and when no one was present. (Record, taped interview with Allison McNay). This witness also stated that she had heard the respondents commenting on the size of the plaintiff's breasts (Record, tape of interview of Allison McNay). The record indicates that the plaintiff and Ms. McNay were present for different work hours than Mr. Nascimento and that he was not present during weekend hours when the two women were working. (Record, p. 223 — "Owners would make pizza because Pimbo the pizza man was out and she was working behind the bar.") The complaint noted that the incidents took place when other employees had left their work area. (Record, p. 228). At oral argument, the respondents suggested that the finding of the CHRO is supported by the report of Jennifer Robbins that she did not see or hear sexually harassing behavior in her work area in the basement. The CHRO made a finding that Ms. Robbins was a part-time bookkeeper who worked during the daytime. No evidence in the record suggested that she was on the premises during evening hours, when the complainant was at work. (Record, p. 82). Ms. Robbins' failure to observe conduct not alleged to have occurred in her presence is simply irrelevant and is another instance of lack of corroboration by a person not identified as having any corroborating information. CT Page 12565
A major part of the CHRO's analysis is the hypothesis that if the plaintiff did not report the occurrences of sexual harassment to certain other employees, they had not occurred. This is not a case in which a complainant made no report of the conduct at issue. The investigator found as a fact that the plaintiff had spoken of sexual harassment to her therapist, Virginia Smithers. (Record, p. 127, finding #18.) The record is clear that the plaintiff had told one of the other four non-managerial female employees, Ms. McNay, of the incidents and comments that were made to her and that she sought legal counsel before leaving her job. The investigator's analysis was that because Ms. McNay said she was friendly with the owner's wife, McNay could have been expected to confide in her, and that because she did not, neither Ms. McNay's nor the plaintiff's accounts were true:
 One would think that because of Ms. McNay's close relationship with Ms. Ann Ardaji [wife of one of the respondents] and her ability to discuss things on a personal level with her, Ms. McNay would not have been inhibited from telling Ms. Ardaji of her husband's actions. It's strange that Ms. McNay felt telling Ms. Ardaji about her husband's actions would break up a marriage which Ms. Ardaji was anticipating dissolving.
(Record, page 128).
Ms. McNay told the CHRO investigator that she did not dare confide in Mrs. Ardaji in part because she feared that such a confidence would lead to her losing her job (Record, tape of interview with Allison McNay).
The court finds the analysis of the CHRO to be lacking in factual support, speculative, illogical, highly unreasonable and unrelated to the plaintiff's credibility. Another employee's choice not to confide in the employer's wife that the employer is sexually harassing her can hardly be found to be a failure to do the expected thing, and at any rate, this choice involves the conduct of a person other than the plaintiff whose complaint is at issue. The investigator found, but unreasonably attached no importance to the finding, that in January 1992, two months before the plaintiff decided to leave her high-paying job and face unemployment, she told a co-worker, Mr. Nascimento, that she was disturbed at how the owners of the restaurant talked to her and that she was planning to sue them for sexual harassment. (Record, page 125, finding #9). CT Page 12566
The plaintiff had named a manager, Nina Djerejian, as a witness who could confirm the working conditions at the restaurant. The investigator's finding from her interview with Ms. Djerejian is remarkably at odds with the statements of that employee. The record contains, at page 69, a letter from the investigator to Ms. Djerejian to confirm the investigator's understanding of what she had been told. That letter contains the following statements as having been made to the investigator by Ms. Djerejian, manager of the wait staff at the restaurant from October 1991 to February 1992:
 You stated that you were let go from Terra due to Mr. Ramze Zakka's treatment of the employees. This treatment consisted of yelling at them in an unprofessional manner and when you attempted to take up for them, you were fired. You stated that you were sure there were acts of sexual harassment by Ramze Zakka, not Paul Ardaji, but you never saw any sexual acts or heard any sexual comments from either.
. . .
 In the afternoon of October 7, 1993, you telephoned me with information regarding remembering that a statement regarding Ms. Blikre spreading her legs was made, but you don't remember who made the statement.
Despite these reports, the investigator analyzed Ms. Djerejian's testimony as supporting the respondents.
In considering claims of sexual harassment or sex discrimination in the work place under Title VII of the Civil Rights Act of 1964, the federal courts have rejected the view that a failure to complain to the employer or otherwise report the situation to others in the workplace defeats a complaint.Meritor Savings Bank v. Vinson, 477 U.S. 57, 72 (1986); Hansel v.Public Service Co. of Colorado, 778 F. Sup. 1126, 1133 (D. Colo. 1991). ("The very nature of sexual harassment inhibits its victims from coming forward because of fear of retaliation.");Marley v. United Parcel Service, Inc., 665 F. Sup. 119, 132
(D.R.I. 1987); Sims v. Montgomery County Commission,766 F. Sup. 1052, 1071 (M.D. Ala. 1990).
After an exhaustive scrutiny of the record, this court finds the finding of no reasonable cause rests on surmise and illogic, CT Page 12567 not upon substantial evidence or analysis of the actual situation alleged. Instead of comparing work hours and determining which employees were even on the premises at the actual time of the conduct alleged, the CHRO issued its decision on the basis of surmise and illogical conjecture, as revealed by the following statements:
 One would surmise that two employees working in proximity of each other would see all actions take place. Also, it is strange that female customers did not complain about the owners' actions, which were taking place during work hours, and began circulating the word around the community about their actions.
(Record, p. 129.)
It is certainly not reasonable to require that a complainant prove the employer's reputation in "the community" or that she confide in multiple fellow employees in order to secure a finding of reasonable cause. This is not a complaint in which it has been shown that the complainant was never alone with the alleged harasser or in which she failed to mention her experience to anyone at all, or in which no other female employee experienced any unusual behavior. A second female employee of the five employed at Terra at the time confirmed that she, too, had experienced harassment, a supervisor described an abusive work environment, and the complainant told three people about the harassment before she decided to leave the job without having other employment.
In its brief (pp. 3-4), the CHRO invokes the familiar principle that the court must review the record as a whole to determine whether its finding of no reasonable cause is supported by the factual findings. It then fails to identify what "factual findings" it deems support its conclusions, but merely states that the respondents denied having engaged in the conduct alleged. The CHRO states that it was entitled to disbelieve the plaintiff because she was "litigation prone" and that "[i]n evaluating credibility, it is proper to consider the plaintiff's intent in the outcome of the case, especially since she is court prone." (CHRO brief, p. 10.) The other litigation to which the CHRO apparently refers was not another complaint of sex discrimination, but a worker's compensation claim arising from a fall at a prior place of employment. The respondents had just as obvious a financial interest in denying the plaintiff's claim as CT Page 12568 she had in making it, and it is troubling that an agency charged with securing remedies for persons whose rights have been violated regard the pursuit of such remedies as a count against credibility. In its brief, the CHRO states that Mr. Nascimento denied that the plaintiff told him that she was being sexually harassed. (CHRO Brief, p. 11.) The tape of his statements to the investigator confirms and the investigator's final report contains a finding that the plaintiff told Mr. Nascimento in January 1992, two months before she left her employment, "that she was planning to sue Mr. Zakka and Mr. Ardaji for sexual harassment based upon how they had talked to her." (Record, page 9, Finding #9.)
In its brief, at page 13, the CHRO comments that it was entitled not to believe the plaintiff because the respondents indicated that after she had told Mr. Nascimento in January 1992 that she planned to sue for sexual harassment, they became suspicious that she was failing to ring up all bar sales. The CHRO investigator, though noting the relationship of the dates, did not analyze this issue at all in recommending a finding of no reasonable cause. Though the respondents claimed that Mr. Nascimento shared their suspicion, the investigator did not ask him about it (Record, Tape of interview of Lorivalde Nascimento 10/5/93).
The record reveals that on October 16, 1992 the respondents' attorney had exhaustively laid out their position to the CHRO investigator in a 23-page letter that contained no mention whatsoever of a suspicion of stealing (Record, pages, 272-295). On March 30, 1992, respondent Ardaji had filed a rebuttal statement that made no mention of such a reason for the plaintiff's departure. (Record, page 332). Ms. McNay told the investigator that when the respondents learned that the plaintiff had sought legal counsel they confronted McNay in an intimidating manner and began accusations that the plaintiff had been stealing, (Record, tape of McNay interview). The investigator never asked why they did not either confront or fire such an employee.
The initial investigative report of CHRO investigator Rashied contains no mention of any claim by the respondents that the plaintiff was suspected of misconduct. (Record, pages 353-356). This court does not find that a respondent's afterthought about a complainant's performance, which was not mentioned until after reconsideration was granted, constitute substantial evidence to CT Page 12569 support the agency's finding of no reasonable cause.
Contrary to the suggestion of the respondents, a trial court is not required to uphold the finding of an administrative agency as long as there is any evidence in the record to support it. Rather, the Supreme Court had held that the court should "search the record of the entire proceedings to determine whether it does in fact contain substantial evidence from which the ultimate factual finding could reasonably be inferred. ConnecticutBuilding Wrecking Co. v. Carothers, 218 Conn. 580, 601 (1991).
The respondents' recollection that they suspected the complainant of stealing is neither substantial evidence to defeat the complaint of sexual harassment nor, in light of its suspiciously late entry into the respondents' position, can it supply a reasonable inference for a finding that the plaintiff and her co-worker, Ms. McNay, were not credible in describing the working conditions at Terra between October 1991 and March 1992.
Credibility
The Supreme Court has noted that "the credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency." Newtown v.Kenney, 234 Conn. 312, 319 (1995), Adriani, 220 Conn. 317-19. The CHRO itself recognizes, however, that it cannot merely declare that it did not believe a complainant and then find no reasonable cause. In its Decision on Reconsideration, the CHRO's staff attorney (Record, page 143, 144) acknowledged the following standard:
 While the investigator is entitled to weigh the credibility of witnesses and draw inferences, that power is conditional upon a thorough investigation, reliance on reliable probative evidence, and the pursuit of evidence corroborative as well as contradictory to the plaintiff's case. Adriani v. CHRO, 220 Conn. 317-19 (1991).
The staff attorney characterized Mr. Rashied's basis for his credibility determination as "vague at best" (Record, page 14.) Ms. Moore's basis is no less vague, and is flawed by reliance on highly suspect assumptions and legally disapproved hypothesis that women experiencing sexual harassment will bruit that fact widely at their workplace. CT Page 12570
As has been discussed above, the agency's basis for its determination of credibility rests on setting up as a standard that a complainant must confide in more than two people and that there must be an eyewitness in addition to 1) a co-worker who confirmed being sexually harassed at the same time and 2) a supervisor who noted that Mr. Zakka treated employees in an abusive manner. The anti-discrimination law which the CHRO is charged with enforcing contains no such standards, and this court will not endorse them as a reasonable interpretation of §46a-60(a)(8).
Like its other determinations, the decisions of the CHRO as to credibility should have a basis in substance.
Unlike the situation in Adriani, the CHRO does not point to objective facts that negate the complainant's account. In that case, the plaintiff alleged that he had been fired because of a medical condition. The CHRO's finding included written reports compiled over a period of years in which his performance of his duties was faulted. Adriani, 220 Conn. 311-12, 324. The CHRO thus had some factual basis to support its finding that the employer was more credible in its position that it had not terminated the complainant's employment on the basis of his medical problem.
The CHRO has identified no such factual basis for finding no reasonable cause as to the plaintiff in this case. It has, instead, posited that a woman who is experiencing sexual harassment must have eyewitnesses and must mention the experience to more than three people (Ms. McNay, Mr. Nascimento and her therapist) in order to be credible. It has further posited that because only two of the five female employees have reported such conduct, and a part-time bookkeeper and a manager have not, the conduct did not occur. While the Supreme Court stated in Adriani
that the CHRO may, at the investigative stage, make determinations based on credibility, it did not approve the making of such a determination without relevant facts or on the basis of such suspect hypotheses as those discussed above. The substantial evidence standard is satisfied only "if the record provides a substantial basis of facts from which the facts in issue can be reasonably inferred." Adriani, 220 Conn. 315;Laurence v. Kozlowski, 171 Conn. 705, 713 (1976).
Conclusion
The CHRO has not identified, and a search of the record by CT Page 12571 this court has not turned up substantial evidence to support its finding. Instead, the findings rest on a web of illogical suppositions that the harassment occurred in full view of customers and baseless requirements that a woman experiencing sexual harassment must supply eye witness corroboration and/or engage in widespread conversations about the situation with more than two fellow employees.
The finding of the CHRO of no reasonable cause is not supported by substantial evidence, as defined in General Statutes § 46a-83. The appeal is sustained and the complaint is remanded to the CHRO.
Beverly J. Hodgson Judge of the Superior Court