[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal from a decision of the Meriden Inland Wetlands and Watercourse Commission [hereinafter IWWC]. The decision at issue granted an application to construct a car wash at 1320 East Main Street, Meriden.
The plaintiff-appellant [hereinafter plaintiff] is an abutting land owner whose property contains a natural spring operating as Mountain Spring Water Co. Plaintiff places a value of ten million dollars on his property. Plaintiff is concerned that the proposed car wash will pose a threat to the long term viability of the spring.
 AGGRIEVEMENT
Plaintiff claims to be aggrieved by the decision of the Commission.
 The fundamental test for determining aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party . . . must successfully establish that this specific personal and legal interest has been specifically and injuriously affected by the decisions.
Rose v. Freedom of Information Commission, 221 Conn. 217, 230,602 A.2d 1019 (1992) [citations omitted].
Plaintiff, a party to all proceedings at the Commission, and the subject of the records at issue, has established aggrievement under this standard.
 AUTHORITY FOR AGENCY ACTION
Pursuant to Conn. Gen. Stat. § 22a-42a, the Commission is empowered to review applications for permitted activity and issue permits.
 SCOPE OF REVIEW
The scope of judicial review of decisions by administrative agencies is limited by the Uniform Administrative Procedure Act, Conn. Gen. Stat. § 4-166, et seq.
 Our resolution of this issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. "[W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion." Ottochian v. Freedom of Information Commission, 221 Conn. 393, 397, 604 A.2d 351
(1992). Even as to questions of law, "[t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. (Emphasis added.) . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Citations omitted; internal quotation marks omitted.) New Haven v. Freedom of Information Commission, 205 Conn. 767, 774, 535 A.2d 1297 (1988).
Perkins v. Freedom of Information Commission, 228 Conn. 158,164-5, 635 A.2d 783 (1993).
 BURDEN OF PROOF
The plaintiff has the burden of proof in challenging action by an administrative agency. Lieb v. Board of Examiners forNursing, 177 Conn. 78, 93, 411 A.2d 42 (1979)
CT Page 1966 Plaintiff claims that the IWWC failed to comply with General Statutes 22a-42a(c)(1). This section provides:
 (c)(1) On and after the effective date of the municipal regulations promulgated pursuant to subsection (b) of this section, no regulated activity shall be conducted upon any inland wetland or watercourse without a permit. Any person proposing to conduct or cause to be conducted a regulated activity upon an inland wetland or watercourse shall file an application with the inland wetlands agency of the town or towns wherein the wetland in question is located. The application shall be in such form and contain such information as the inland wetlands agency may prescribe. The day of receipt of an application shall be the day of the next regularly scheduled meeting of such inland wetlands agency. immediately following the day of submission to such inland wetlands agency or its agent of such application, provided such meeting is no earlier than three business days after receipt, or thirty-five days after such submission, whichever is sooner. The inland wetlands agency shall not hold a public hearing on such application unless the inland wetlands agency determines that the proposed activity may have a significant impact on wetlands or watercourses, a petition signed by at least twenty-five persons requesting a hearing is filed with the agency not later than thirty days after the submission of such application or the agency finds that a public hearing regarding such application would be in the public interest. Such hearing shall be held no later than sixty-five days after the receipt of such application. Notice of the hearing shall be published at least twice at intervals of not less than two days, the first not more than fifteen days and not fewer than ten days, and the last not less than two days before the date set for the hearing in a newspaper having a general circulation in each town where the affected wetland or watercourse, or any part thereof, is located. All applications and maps and documents relating thereto shall be open for public inspection. At such hearing any person or persons may appear and be heard. The hearing shall be completed within forty-five days of its commencement. Action shall be taken on such application within thirty-five days after the completion of a public hearing or in the absence of a public hearing within sixty-five days from the date of receipt of such application. The applicant may consent to one or more extensions of the periods specified in this subsection for the holding of hearing and for action on suchCT Page 1967 application provided the total extension of any such period shall not be for longer than the original period as specified in this subsection, or may withdraw such application. If the inland wetlands agency, or its agent, fails to act on any application within thirty-five days after the completion of a public hearing or in the absence of a public hearing within sixty-five days from the date of receipt of the application, or within any extension of any such period, the applicant may file such application with the Commissioner of Environmental Protection who shall review and act on such application in accordance with this section. Any costs incurred by the commissioner in reviewing such application for such inland wetlands agency shall be paid by the municipality that established or authorized the agency. Any fees that would have been paid to such municipality if such application had not been filed with the commissioner shall be paid to the state. The failure of the inland wetlands agency or the commissioner to act within any time period specified in this subsection, or any extension thereof, shall not be deemed to constitute approval of the application.
[Emphasis added.]
 The chronology of events herein is as follows, and is not in dispute.
 September 17, 1996 Application filed October 2, 1996 Receipt of Application[1]
December 4, 1996 Public Meeting (3-3 tie vote)[2]
February 10, 1997 Public Meeting (Application approved)[3]
Plaintiff claims that, within the meaning of this section, the fact that the action of the IWWC on December 4 resulted in a tie vote constituted a "failure to act." Under the statute, this would mean the application had not been approved. Section 6-12 of the Meriden rules and regulations for the IWWC states that:
§ 6-12. Quorum: voting; rules of procedure.
 Except where otherwise specifically provided by statute, Charter or other legislation, a majority of the members of the Inland Wetland and Watercourse Commission must be present to constitute a quorum, and a majority vote of the total CT Page 1968 membership of the Commission is required for action. The Commission may establish such rules of procedure as it deems necessary, provided that no such rule shall conflict with any other legislation.
Thus, it is clear that the IWWC had not "acted" upon the application at the meeting wherein the tie vote resulted.
Defendant does not dispute that the tie vote was a "no action" vote. Instead they claim that the tabling of the matter to the next meeting "affectively [sic] grant[ed] an extension that the defendants were entitled to under the statute." Defendant's brief p. 3.
An appeal from an administrative proceeding is a record appeal, and the court is strictly confined thereto. The only exception to this long standing rule is a situation wherein an error in procedure is claimed, and the court grants a motion to adduce additional evidence. Lieb, supra at 92; Conn. Gen. Stat. § 4-183(h). No such motion was made in this case. As noted herein, Conn. Gen. Stat. § 22a-42a(c)(1) states, with regard to the time limits, that "[t]he applicant may consent to one or more extensions of the periods specified in this subsection for the holding of the hearing and for action on such application . . ." (emphasis added). In the present case, it was the Commission, by voting to table the matter, which gave itself an extension. "Informal guidelines . . . outside the rulemaking framework of the Uniform Administrative Procedure Act . . . may not be applied as substantive rules." George v. St. Ann's Church,182 Conn. 314, 322, 438 A.2d 97 (1980). At argument, the court brought this to the attention of the parties. Counsel for the applicant, who appeared at the court hearing, claimed that his presence at these meetings was enough to show that he consented to the "tabling" herein. The handwritten minutes of December 4. 1996, do not reflect the presence of counsel for the applicant. In fact counsel is omitted from the list of those present, and there is no mention of counsel in the recitation of items discussed. In the typewritten minutes[4] for the December 4, 1996 meeting of the IWWC, there is no mention of the applicant counsel's presence. In fact, the record reflects nothing more than a discussion among commission members with no input from any other person.
Time limits in statutes governing administrative action have been interpreted as mandatory. Board of Police Commissioners v.CT Page 1969Freedom of Information Commission, 199 Conn. 451, 452,507 A.2d 1385 (1986). In this case, extensions may be had by statute, but only with the consent of the applicant. It is clear from this record that the extension, or "tabling," was solely on the motion of the commission. The court cannot infer the presence of applicant's counsel, nor take the further leap that, not only was he there, his silence was assent, when there is no evidence on the record to suggest that the applicant or his counsel were present when this action occurred.
For the foregoing reasons, plaintiff's appeal is hereby sustained.
DUNNELL, J.